JESSE WALTER BISHOP, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 10701

July 2, 1979                                        597 P.2d 273

*Morgan D. Harris,* Public Defender, *George E. Franzen,* Deputy Public Defender, *Kirk B. Lenhard,* Deputy Public Defender, Clark County, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *Douglas Clark,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

On the night of December 20, 1977, appellant robbed a cashier at a Las Vegas casino. During the commission of the crime, David Ballard, a patron of the casino, and Larry Thompson, an employee of the casino, were shot by the appellant when they attempted to prevent the robbery. Ballard died as a result of the wound. The shooting was witnessed by several persons. who identified appellant as the perpetrator.

Bishop was charged with nine felony counts, including the first degree murder of David Ballard. NRS 200.030(1)(b).[1] At an early stage in the proceedings Bishop made it known that he wanted to represent himself and plead guilty to all charges. The public defenders assigned to the appellant questioned his competency to make such a decision. Before the district court would accept a plea or rule on appellant's request for *pro per* representation, the court ordered a psychiatric evaluation. The three psychiatrists who examined Bishop concluded that he was competent to enter the plea and possessed the ability to knowingly and intelligently waive the right to counsel.

After hearing the psychiatrists' testimony, the court entered into a lengthy discussion with the appellant. Appellant was apprised that the maximum sentence for conviction of first degree murder was death; the court explained the various pitfalls and disadvantages of self-representation; and the district court judge expressed his personal opinion against *pro per* representation. Nevertheless, appellant insisted on dismissing the

---

[1]NRS 200.030(1)(b) provides in pertinent part:

"1.   Murder of the first degree is murder which is:

. . . .

(b) Committed in the perpetration or attempted perpetration of . . . robbery. . . ."

court-appointed public defenders.[2] On the basis of Faretta v. California, 422 U.S. 806 (1975), the court granted appellant's motion for self-representation. However, the court ordered the public defenders to remain in the court as "standby counsel" in the event the appellant desired their advice or assistance.

Appellant pled guilty to all counts. Pursuant to NRS 175.558, a three-judge panel was appointed by this Court to determine appellant's sentence for first degree murder. Prior to the sentencing hearing, the state notified Bishop that it intended to seek the death penalty. At the hearing the state presented evidence tending to establish the presence of five aggravating circumstances. NRS 200.033.[3] At the stage in the

---

[2]Appellant told the court that he did not want to contest the charge because his experience gained from past encounters with the criminal law told him that he had no chance to "beat" the charge and, furthermore, he did not want to drag his family through a lengthy and frivolous trial.

[3]NRS 200.033 provides:

"The only circumstances by which murder of the first degree may be aggra- ·vated are:

"1. The murder was committed by a person under sentence of imprisonment.

"2. The murder was committed by a person who was previously convicted of another murder or of a felony involving the use or threat of violence to the person of another.

"3. The murder was committed by a person who knowingly created a great risk of death to more than one person by means of a weapon, device or course of action which would normally be hazardous to the lives of more than one person.

"4. The murder was committed while the person was engaged, or was an accomplice, in the commission of or an attempt to commit or flight after committing or attempting to commit, any robbery, forcible rape, arson in the first degree, burglary or kidnaping in the first degree.

"5. The murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

"6. The murder was committed by a person, for himself or another, for the purpose of receiving money or any other thing of monetary value.

"7. The murder was committed upon a peace officer or fireman who was killed while engaged in the performance of his official duty or because of an act performed in his official capacity, and the defendant knew or reasonably should have known that the victim was a peace officer or fireman. For purposes of this subsection "peace officer" means sheriffs of counties and their deputies, marshals and policemen of cities and towns, the chief and agents of the investigation and narcotics division of the department of law enforcement assistance, personnel of the Nevada highway patrol, and the director, deputy director, correctional officers and other employees of the department of prisons when carrying out the duties prescribed by the director of the department.

"8. The murder involved torture, depravity of mind or the mutilation of the victim.

"9. The murder was committed upon one or more persons at random and without apparent motive."

The state argued that the first five subsections all apply to the appellant.

proceedings when it became appellant's opportunity to present witnesses regarding mitigating circumstances, NRS 200.035,[4] appellant replied that he had no witnesses to present. At that time the panel called for a brief recess and advised Bishop to confer with the "standby counsels" during the break. When the hearing was reconvened the "standby counsels" informed the panel that they believed there were certain mitigating circumstances present, but, because Bishop adamantly refused to allow the presentation of such evidence, the public defenders did not elaborate on that evidence. When questioned by the panel appellant admitted the truthfulness of the standby counsels' remarks, but adhered to his position not to present any evidence. The panel then proceeded to hear closing arguments by the state.

The panel unanimously concluded that appellant's crime was aggravated by five circumstances: (1) he was under a sentence of imprisonment in California (at the time of the murder appellant was on parole from an armed robbery conviction); (2) he had previously been convicted of a felony involving the use or threat of violence to the person of another; (3) he knowingly created a great risk of death to more than one person by means of a weapon; (4) he committed the murder while engaged in the commission of a robbery; and (5) the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. Furthermore, the panel concluded that there were no mitigating circumstances because (1) the state had proven the non-existence of several of the circumstances, and (2) appellant had failed to present evidence establishing the existence of the remaining factors. Accordingly, he

---

[4]NRS 200.035 provides:

"Murder of the first degree may be mitigated by any of the following circumstances, even though the mitigating circumstance is not sufficient to constitute a defense or reduce the degree of the crime:

"1. The defendant has no significant history of prior criminal activity.

"2. The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"3. The victim was a participant in the defendant's criminal conduct or consented to the act.

"4. The defendant was an accomplice in a murder committed by another person and his participation in the murder was relatively minor.

"5. The defendant acted under duress or under the domination of another person.

"6. The youth of the defendant at the time of the crime.

"7. Any other mitigating circumstance."

was sentenced to die by the administration of lethal gas.[5] NRS 175.554(2).[6]

During oral argument before this Court, appellant, who was represented by his "standby counsels", abandoned his claim concerning the legality of the guilty plea, and challenged only the legality of the sentencing hearing. Appellant claims the tribunal erred because (1) it should have heard evidence concerning mitigating circumstances; (2) some of the evidence used to prove aggravating circumstances had been unconstitutionally obtained; and (3) the death penalty constitutes cruel and unusual punishment. We disagree.

1.  While a defendant must be given the opportunity to present evidence of whatever mitigating circumstances may be relevant to either the particular offender or the particular offense before a death penalty can be imposed, Lockett v. Ohio, 438 U.S. 586 (1978); Roberts v. Louisiana, 431 U.S. 633 (1977); Woodson v. North Carolina, 428 U.S 280 (1976); Smith v. State, 93 Nev. 82, 560 P.2d 158 (1977), a defendant must also be allowed to represent himself if he so elects. Faretta v. California, *supra*. *Cf.* Ingle v. State, 92 Nev. 104, 546 P.2d 598 (1976).

Even though the offense for which a defendant is being tried may carry a penalty of death, the defendant must be allowed *pro per* representation. People v. Teron, 588 P.2d 773 (Cal. 1979);[7] Thomas v. Superior Court, 126 Cal.Rptr. 830 (Cal.App. 1976); Commonwealth v. Davis, 388 A.2d 324 (Pa. 1978). In Commonwealth v. Davis, *supra,* a case which was tried before a jury, the district court judge advised the *pro per* defendant, *outside the presence of the jury, that he would be* entitled to the "age of the offender" mitigating circumstance; nevertheless, the defendant decided not to present any argument to the jury. On appeal, the Pennsylvania Supreme Court held, citing *Faretta,* that it would have been constitutional

[5]Subsequently, appellant was also sentenced to a total of 195 years in the Nevada State Prison on the remaining eight felony counts.

[6]NRS 175.554(2) provides in pertinent part:

"The jury or the panel of judges may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found."

[7]The California Supreme Court has recognized, without resolving, the issue of a defendant's right to self-representation in a death penalty hearing. People v. Teron, 588 P.2d 773, 779, n. 7 (Cal. 1979); Rockwell v. Superior Court, 556 P.2d 1101, 1114, n. 14 (Cal. 1976).

error for the judge to have refused Davis his right to represent himself.[8] 388 A.2d at 328.

In the case at hand, Bishop had ample opportunity to present evidence of mitigating circumstances; however, he made it clear that he did not want to present or have standby counsel present such evidence. He had a Sixth Amendment right not to have counsel forced upon him. Faretta, *supra*. When a defendant knowingly and voluntarily waives his right to counsel, as here, his refusal to present a defense does not negate his *pro per* election. People v. Teron, *supra*. "Under *Faretta,* the state may not constitutionally prevent a defendant charged with a commission of a criminal offense from controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant." Curry v. Superior Court, 141 Cal.Rptr. 884, 887 (Cal.App. 1977). For this reason, the sentencing tribunal did not err when it did not delve into the mitigating evidence referred to by the standby counsels.

2. NRS 175.552 provides in part that during the penalty hearing, "[n]o evidence which was secured in violation of the Constitution of the United States or the constitution of the State of Nevada may be introduced". Appellant claims that such evidence was used to prove aggravating circumstances. However, since the appellant failed to object or otherwise protest the presentation of this evidence, and on its face it was not clear that the evidence was unconstitutionally obtained, we need not consider its admissibility on appeal. *Cf.* Guynes v. State, 92 Nev. 693, 558 P.2d 626 (1976); Hampton v. State, 85 Nev. 720, 462 P.2d 760 (1969).

3. Appellant argues that the death penalty is cruel and unusual punishment and is therefore unconstitutional. The Nevada statutes authorizing the imposition of the death penalty are similar to the Florida statutes which were found to be constitutional in Proffit v. Florida, 428 U.S. 242 (1976). The Nevada statutes provide for a consideration of any mitigating factor the defendant may want to present. NRS 200.035(7). *Cf.*

---

[8]The jury sentenced Davis to death. However, on appeal the court commuted the sentence to life imprisonment because the statute under which Davis had been sentenced had been previously declared unconstitutional.

518

Lockett v. Ohio, *supra*. The imposition of the death penalty in this case offends neither the United States Constitution nor the Nevada Constitution.

4. After a careful review of the record we conclude that appellant's sentence was not imposed under the influence of passion, prejudice or any arbitrary factor. Furthermore, there is sufficient evidence to support the finding by the sentencing panel of five aggravating circumstances. Considering both the crime and the defendant, we conclude that the death penalty is not excessive or disproportionate to the penalty imposed in similar cases in this state. *E.g.,* State v. Sala, 63 Nev. 270, 169 P.2d 524 (1946).

Judgment affirmed. *See* NRS 176.505.[9]

MOWBRAY, C. J., and THOMPSON, J., concur.

GUNDERSON, J., concurring:

I concur fully in the views expressed by MR. JUSTICE BATJER; however, I wish to add one observation.

Unless the U.S. Supreme Court limits prior declarations, I think we must assume that the right of an accused to act as his own defense counsel carries the right to make usual choices concerning tactics and strategy. Many trials present hard choices concerning what evidence should be adduced on various issues. Whether particular evidence will "mitigate" or aggravate the criminality of a generally known set of circumstances is, often, a question on which reasonable minds differ. Thus, I think the majority is correct in concluding that appellant's decision cannot be viewed as "waiving" evidence of "mitigation." Such a characterization—which assumes that counsel, rather than the appellant, necessarily knew best—is contrary to the concept of *Faretta* as thus far articulated.

If the district court had permitted standby counsel to introduce evidence over the appellant's objection, and then had sentenced appellant to death, we would now face the contention that the court had prejudicially interfered with the accused's right to represent himself.

[9]NRS 176.505 provides:

"When a remittitur showing the affirmation of a judgment of death has been filed with the clerk of the court from which the appeal therefrom has been taken, the court in which the conviction was had must inquire into the facts, and, if no legal reasons exist against the execution of the judgment, must make and enter an order that the director of the department of prisons shall execute the judgment at a specified time; but the presence of the defendant in the court at the time the order of execution is made and entered, or the warrant is issued, as in this section provided, is not required."

MANOUKIAN, J., dissenting in part:

Respectfully, I dissent from that part of the majority opinion which holds, "the sentencing tribunal did not err when it did not delve into the mitigating evidence referred to by the standby counsels." Although I have no quarrel with the imposition of the death penalty *per se,* the fundamental respect for humanity which underlies our system of justice demands that I acquiesce in the imposition of the penalty only upon a procedurally clean record. My brethren affirm the imposition of the death penalty, in disregard of the critical procedural infirmity which infects this case, and, in my view, in violation of our own statutes and the pronouncements of the highest Court of the land.

The majority reasons that because Faretta v. California, 422 U.S. 806 (1975), permits self-representation and because appellant chose to proceed without counsel, he cannot now be heard to complain of any right he waived, no matter how important the right and regardless of the drastic consequences of the waiver. I disagree with the court's interpretation of *Faretta* and submit that it is not altogether clear whether *Faretta* and its progeny have any applicability in the context of a penalty hearing in a capital case.[1] Clearly, the California Supreme Court has expressly declined to rule on the issue, People v. Teron, 588 P.2d 773, 779, fn. 7 (Cal. 1979), and the Pennsylvania case

[1] In *Faretta,* the high Court simply held that *under the circumstances there present,* where the defendant was charged with grand theft and timely asserted his right to proceed with his own defense, the California courts, by forcing him "to accept against his will a state-appointed public defender . . . deprived him of his constitutional right to conduct his own defense. . . ." Faretta v. California, *supra,* at 836.

In United States v. Taylor, 569 F.2d 448 (7th Cir. 1978), cert. denied, 435 U.S. 952, 98 S.Ct. 1581, the Court stated:

We recognize that *Faretta* holds that an accused has a constitutional right to dispense with the assistance of counsel and to conduct his defense personally. It does not inevitably follow, however, that this right of self-representation comprehends any correlative right to preclude the trial court from appointing counsel and authorizing him to participate in the trial over the accused's objection in order to protect the public interest in the fairness and integrity of the proceedings. [Footnote omitted.]

*Id.,* at 452. Here, the panel apparently believed it was acting in accordance with the mandates of *Faretta.* In my view, such a narrow reading of *Faretta* was unjustified given the circumstances of this case. Indeed, Faretta contemplates that a state court, even over the objection of an accused, has discretion to appoint " 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused *in the event that termination of the defendant's self-representation is necessary."* Faretta v. California, *supra,* at 835, fn. 46. (Emphasis added.) To protect the integrity of the criminal process, the panel owed a duty to temporarily suspend Bishop's right to proceed in his own behalf so that the sentencing proceedings could be made more complete.

cited by the majority does not squarely address the point. Com. v. Davis, 388 A.2d 324 (Pa. 1978).[2]

The United States Supreme Court has held unequivocally that a defendant must be allowed to present mitigating circumstances before the death penalty may be imposed. Lockett v. Ohio, 438 U.S. 586 (1978); H. Roberts v. Louisiana, 431 U.S 633 (1977); Woodson v. North Carolina, 428 U.S. 280 (1976); and see Smith v. State, 93 Nev. 82, 560 P.2d 158 (1977). The question in this case is whether a defendant alone may waive that right, and whether a three judge panel may honor that waiver even when standby counsel are present in court, ready to present such evidence in mitigation. In my view, the answer is no. The panel, having ordered the presence of standby counsel, and having urged Bishop to consult with them, should have given counsel reasonable deference, notwithstanding their client's "death wish."[3] Anything less constitutes state-sanctioned suicide. Moreover, the state has an independent interest in penalty determinations. See Com. v. McKenna, 383 A.2d 174 (Pa. 1978). Our statutes permit sentencing a defendant to death only after the sentencing tribunal has carefully balanced the aggravating and mitigating circumstances of the crime, the defendant, and the victim. NRS 175.588, 175.554(2), and see NRS 200.035. These statutes, as well as our prior decisions impose an affirmative duty upon the tribunal. See Smith v. State, *supra.* A sentencing hearing in a death penalty case is more of a fact-finding proceeding than a traditional adversary hearing. As such, the panel should have had the benefit of *all* relevant evidence, including that offered by standby counsel. NRS 175.552. Although the panel concluded the state had disproven the existence of several of the mitigating circumstances specified in NRS 200.035, subsection 7 of that statute allows proof of "any other mitigating circumstance." The panel should have permitted standby counsel to speak. See United States v. Dougherty, 473 F.2d 1113 (D.C. Cir. 1972).

In Com. v. McKenna, *supra,* defendant appealed his convictions of rape and first degree murder, but refused to challenge his death sentence. The court affirmed the convictions but remanded for resentencing on the ground that the statute under which McKenna was sentenced was unconstitutional. *Id.,* at 179. The Pennsylvania court held that the defendant could *not*

---

[2]Although Davis represented himself during trial (with the assistance of standby counsel), he *was* represented by counsel at the time of the formal postverdict sentencing proceedings and in the prosecution of his appeal. Com. v. Davis, *supra,* at 325, fn. 2.

[3]The record in this case is replete with indications by appellant of his desire to be executed pursuant to law. Moreover, Bishop has communicated his wish to me and the other members of this court.

waive his right to challenge the death penalty statute, reasoning:

> *[T]he waiver concept was never intended as a means of allowing a criminal defendant to choose his own sentence.* Especially is this so where, as here, to do so would result in state aided suicide. The waiver rule cannot be exalted to a position so lofty as to require this court to blind itself to the real issue—the propriety of allowing the state to conduct an illegal execution of a citizen. [Footnote omitted.]
>
> In short, where an overwhelming public interest is involved, but is not addressed by the parties, this Court has a duty to transcend procedural rules which are not, in spirit, applicable, to the end that the public interest may be vindicated. Such an overwhelming public interest—insuring that capital punishment in this Commonwealth comports with the Constitution of the United States—is present here. (Emphasis added.)

*Id.,* at 181.

Under Faretta v. California, *supra,* an accused's Sixth Amendment right to waive counsel is construed as a right personal to him. However, the authority to prescribe punishment and establish sentencing guidelines, particularly in capital cases, must be done within the proscriptions of the Eighth Amendment and such power is vested in the State and can not be independently exercised by the accused. See Hayes v. United States, 238 F.2d 318 (10th Cir. 1956); Commonwealth v. McKenna, *supra.* Specifically, the right to *pro se* representation in a criminal proceeding is personal to the defendant through the Sixth Amendment, and is separate from the Eighth Amendment objective of the State to be apprised of all relevant circumstances of an offense, the defendant, and the victim, before imposition of the death penalty.

The right of *pro se* representation is not an open invitation to evade the statutory intendments and the pronouncements of the United States Supreme Court which mandate meaningful and plenary bifurcated criminal proceedings. The sentencing tribunal, charged with the duty of insuring that justice be achieved, see Brady v. Maryland, 373 U.S 83 (1963), should have heard the mitigating circumstances Bishop's standby counsel so zealously sought to present. Inevitably, the expense of its failure to do so, and my brethren's affirmance of that error, will be further protracted proceedings in the federal system.

I dissent. I would reverse and remand for further sentencing proceedings before the same panel.