LAWRENCE COLWELL, AKA CHARLES DURRANT, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 27570

June 24, 1996 919 P.2d 403

[Rehearing denied February 27, 1998]

*State Public Defender* and *James P. Logan,* Appellate Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart Bell,* District Attorney and *James Tufteland,* Chief Deputy, Clark County, for Respondent.

## OPINION

*Per Curiam:*

On March 10, 1994, appellant Lawrence Colwell, aka Charles Durrant, and his girlfriend, Merillee Paul, were at the Tropicana Hotel in Las Vegas. They devised a plan whereby Paul would pretend she was a prostitute, find a male victim, go with him back to his room and rob him. Seventy-six-year-old Frank Rosenstock was the unsuspecting victim of their nefarious plan. Paul went with Rosenstock back to his room and persuaded him to get into the bathtub. While he was in the bathtub, Paul searched through his belongings for money and valuables. Without success in locating anything of value, she telephoned Colwell in the hotel lobby. Colwell told her to "wait there" and he proceeded up to the room.

Colwell knocked on the door, posing as a security guard, and Paul opened the door to let him enter. Colwell showed a fake badge and told Rosenstock he was being arrested for solicitation. Colwell handcuffed Rosenstock. Colwell found Rosenstock's wallet and took it from him. The wallet contained credit cards and cash.

While Rosenstock was handcuffed, Colwell proceeded to take his belt and wrap it around Rosenstock's throat. Colwell looped the belt through the buckle and strangled Rosenstock. In the course of the strangulation, Colwell slid Rosenstock off the bed down to the floor. He had his foot on Rosenstock's shoulders as he pulled on the belt; as he did so, Colwell told Paul that it took a person six to eight minutes to die from strangulation. Colwell strangled Rosenstock for at least five minutes. Finally, when Rosenstock's face was purple and Colwell could tell he was no longer breathing, he removed the belt.

Colwell and Paul then wiped areas of the room down with wet rags to remove fingerprints. They took a number of items from the room and placed them in Rosenstock's suitcase, including the belt Colwell used to strangle Rosenstock and many other items, including glasses and ashtrays, which they might have touched. Colwell kept the buckle from the belt. When finished, they exited the room, leaving Rosenstock lying face-down and dead on the floor. The two then went to a room at the Royal Oasis Motel.

The two left Las Vegas and went to Palm Springs where they met Kenneth Abell. Colwell told Abell about killing Rosenstock. Using Abell's car, Colwell and Paul drove to Oregon. In Oregon, Paul turned herself in to the authorities. Paul eventually entered into a plea agreement with the State whereby she agreed to plead

guilty to first degree murder and testify against Colwell; in exchange for this agreement, the State would recommend a sentence of life with the possibility of parole.

Colwell was arrested and arraigned; the State informed the court it would *not* be seeking the death penalty. Colwell desired to represent himself and so a hearing was held for the purpose of canvassing Colwell pursuant to Faretta v. California, 422 U.S. 806 (1975). Prior to this hearing, Colwell had agreed with the State to plead guilty to all charges on the condition that the State change its position and diligently seek the death penalty. The district court filed the Notice of Intent to Seek Death Penalty.

Colwell was canvassed and allowed to represent himself. However, the court appointed standby counsel for him. Colwell was allowed to plead guilty to one count of murder in the first degree pursuant to NRS 200.010, NRS 200.020 and NRS 200.030, one count of burglary pursuant to NRS 205.060, and one count of robbery of a victim 65 years of age or older pursuant to NRS 193.167 and NRS 200.380. Colwell requested that the penalty hearing be conducted as soon as possible.

During the two-day penalty hearing before a three-judge panel, Colwell failed to conduct meaningful cross-examination and in fact attempted to bring out damaging evidence that the prosecution had failed to address. In addition, Colwell made no objections to the State's evidence. In fact, Colwell's failure to make any objections was so obvious that members of the three-judge panel felt compelled to comment. Further, Colwell refused to introduce any mitigating evidence. Prior to closing arguments, the State as well as the panel explained to Colwell his right of allocution and his opportunity to present evidence. During closing argument, the State argued both the existence of seven aggravating factors and the non-existence of any mitigating evidence. Colwell's closing argument was a plea that he be put to death. Prior to sentencing, Colwell was given one final chance to introduce mitigating evidence; he declined. The panel found the existence of four of the seven alleged aggravating circumstances and found that no mitigating circumstances existed. By unanimous vote, the panel sentenced Colwell to death.

Colwell's appointed appellate counsel appeals Colwell's death sentence on the following grounds: (1) the death penalty was unconstitutionally imposed in this case because the constitutionally-mandated narrowing function could not be implemented; (2) this court cannot conduct meaningful review of the death sentence in this case; (3) NRS 213.085 renders Nevada's death penalty scheme unconstitutional; (4) Nevada's three-judge panel procedure is unconstitutional; (5) Nevada's death penalty scheme does not sufficiently narrow the categories of eligible defendants and is thus unconstitutional; (6) only those

aggravating circumstances set forth in NRS 200.033 may constitutionally be used as aggravating circumstances; and (7) the death penalty is cruel and unusual punishment in all circumstances in violation of the Eighth Amendment and the Nevada Constitution. For the following reasons, we conclude that Colwell's counsel's claims are meritless.

Colwell's counsel first claims that the death penalty was unconstitutionally imposed in this case because the constitutionally-mandated procedure for narrowing the class of death-eligible defendants could not be implemented given that Colwell not only intentionally chose not to present mitigating evidence but affirmatively tried to skew the evidence presented to aid the State in the presentation of its case at the penalty hearing. We conclude that a criminal defendant is entitled to represent himself in whatever manner he wishes, whether that be by introducing mitigating evidence, by not introducing mitigating evidence or even by actively seeking the death penalty. *See* Bishop v. State, 95 Nev. 511, 516-17, 597 P.2d 273, 276 (1979) (holding that when a defendant knowingly and voluntarily waives his right to counsel, his refusal to present a defense does not negate his *pro per* election and the sentencing tribunal has no duty to delve into mitigating evidence referred to by standby counsels); State v. Felde, 422 So. 2d 370, 394-95 (La. 1982), *cert. denied,* 461 U.S. 918 (1983) (holding, in effect, that *Faretta* allows a defendant to affirmatively present evidence that he deserves the death penalty and to, in closing argument, urge the imposition of the death penalty).[1] Therefore, we hold that Colwell's actions did not render his resulting sentence unconstitutional.

Second, Colwell's counsel contends that this court cannot conduct meaningful appellate review of Colwell's death sentence pursuant to NRS 177.055(2) because Colwell intentionally failed to challenge evidence, intentionally failed to present mitigating evidence and aided the State in presenting its case.[2] Given that

---

[1]The various authority Colwell's counsel cites is either distinguishable or wholly inapplicable. All of the cases cited by Colwell's counsel stand for the proposition that a defendant must be given the *opportunity* to present mitigating evidence and the sentencer must consider that evidence once it is presented. Colwell was given that opportunity. Nothing in any of the cases cited by Colwell's counsel directs that a court must discover mitigating evidence which a defendant has decided not to present.

[2]NRS 177.055(2) requires any sentence of death to be reviewed to determine if that sentence was imposed arbitrarily or under the influence of passion or prejudice or is excessive considering both the crime and the defendant.

there is no requirement that a defendant present mitigating evidence or put on a defense in a death penalty hearing, we conclude that there can be no infirmity in the record on review if the record does not contain mitigating evidence, and therefore this court can meaningfully review Colwell's death sentence.

Third, Colwell's counsel claims that NRS 213.085 renders Nevada's death penalty scheme unconstitutional by completely denying him a chance for clemency.[3] Colwell's counsel is imprecise in his argument. "Clemency" encompasses the power to commute a sentence or to pardon. *Cf.* NRS 213.095 (equating the granting of clemency with remitting a fine or forfeiture, commuting a sentence or granting a pardon). Commutation is the changing of one sentence to another while a pardon absolves a defendant of the crime altogether. *See* Pinana v. State, 76 Nev. 274, 281-83, 352 P.2d 824, 829 (1960) (parole, pardon and commutation are each distinguishable). NRS 213.085 addresses only an aspect of commutation and does not address other forms of clemency, including the pardon power. Thus, NRS 213.085 does not completely deny the opportunity for "clemency," as Colwell's counsel contends, but rather modifies and limits the power of commutation. Accordingly, Colwell's counsel's claim lacks merit.

Fourth, Colwell's counsel contends that the three-judge panel utilized in this case is unconstitutional for two reasons. His first argument is that the three-judge panel procedure creates a special court unconstitutionally encroaching on the judicial power and inconsistent with the constitutional jurisdiction of the district courts[4] or an improper hybrid court composed of one judge exercising judicial power and two judges functioning in a non-judicial role.

---

[3]NRS 213.085(1) provides as follows:

> If a person is convicted of murder of the first degree before, on or after July 1, 1995, *the board shall not commute:*
> (a) *A sentence of death*; or
> (b) A sentence of imprisonment in the state prison for life without the possibility of parole,
> *to a sentence that would allow parole.*

(Emphasis added.)

[4]Colwell's counsel cites, *inter alia,* People *ex rel.* Rice v. Cunningham, 336 N.E.2d 1 (1975) (striking down Illinois' three-judge panel procedure in death penalty cases as an unconstitutional encroachment by the legislature onto the jurisdiction of Illinois' trial courts). *Rice* was decided based on an interpretation of Illinois law and we do not determine it to be persuasive here.

We hold that this argument lacks merit because (1) the Nevada Constitution contains no language prohibiting the legislature from providing that district judges must act as a collegial body in the exercise of certain proper judicial functions, such as sentencing, and (2) the legislature clearly has the power to regulate procedure in criminal cases. The three-judge panel procedure does not interfere with judicial power or district court jurisdiction as those concepts are understood. *See* Bergman v. Kearney, 241 F. 884, 898 (D. Nev. 1917) (defining the ''judicial power'' as ''the power to decide finally and conclusively, and also the power to carry its determination into effect''); Rohlfing v. District Court, 106 Nev. 902, 906-07, 803 P.2d 659, 662-63 (1990) (illustrating that a true example of conflicting jurisdiction arises when one district court judge, equal in jurisdiction to another, attempts to overrule another district judge's *prior* determination purporting to nullify the force and effect of the prior judge's decision); *see also* Johnson v. Goldman, 94 Nev. 6, 575 P.2d 929 (1978); State *ex rel.* Watson v. Merialdo, 70 Nev. 322, 268 P.2d 922 (1954); Pacific L.S. Co. v. Ellison R. Co., 46 Nev. 351, 213 P. 700 (1923); State v. Wildes, 34 Nev. 94, 116 P. 595 (1911). The three-judge panel procedure creates no new power which did not already lie within the power of the district courts, namely, the sentencing of criminal defendants. *See* Cabana v. Bullock, 474 U.S. 376, 385-86 (1986) (a capital defendant does not have a constitutional right to a jury determination of punishment, thus, it is constitutional for a defendant to be sentenced by a judge); Spaziano v. Florida, 468 U.S. 447, 457-65 (1984); Redmen v. State, 108 Nev. 227, 235, 828 P.2d 395, 400-01, *cert. denied* 506 U.S. 880 (1992); Baal v. State, 106 Nev. 69, 74-75, 787 P.2d 391, 395 (1990); NRS 176.033(1)(a); NRS 176.035; NRS 176.045.

Colwell's counsel's second argument challenging the constitutionality of the three-judge panel procedure is that the three-judge panel procedure violates a defendant's right to an impartial tribunal, due process and a reliable sentence by disallowing challenges to the qualifications and selection of panel members and by returning death sentences more often than juries.

As to this argument, we note that this court has addressed this exact issue on numerous other occasions and found it to be meritless. *See, e.g.,* Paine v. State, 110 Nev. 609, 617-18, 877 P.2d 1025, 1030-31 (1994), *cert. denied,* ...... U.S. ......, 115 S. Ct. 1405 (1995). Colwell's counsel ''has not provided additional and more persuasive arguments than those already considered by

this court to persuade us to overrule our decision in *Paine.*" Riker v. State, 111 Nev. 1316, 1326, 905 P.2d 706, 712 (1995), *cert. denied,* ...... U.S. ......, 64 U.S.L.W. 3763 (May 13, 1996). Accordingly, Colwell's counsel's second argument lacks merit as well.

[Headnote 8]

Fifth, Colwell's counsel claims that Nevada's death penalty scheme, enumerating the death-eligible aggravating circumstances, insufficiently narrows the categories of death-eligible defendants and is therefore unconstitutional. Nevada's death penalty statute is essentially identical to the Georgia and Florida death penalty statutes upheld as facially constitutional by the United States Supreme Court. *See* Deutscher v. State, 95 Nev. 669, 676, 601 P.2d 407, 412 (1979). We conclude from the record that the aggravating circumstances used by the panel in this case to impose the death sentence sufficiently narrowed the determination of Colwell's death eligibility and, therefore, we hold that Colwell's counsel's appeal on this issue lacks merit.

Sixth, Colwell's counsel contends that only those aggravating circumstances set forth in NRS 200.033 may be constitutionally used as aggravating circumstances in determining death eligibility. He asserts that this court's ruling in Allen v. State, 99 Nev. 485, 488, 665 P.2d 238, 240 (1983), that "any other matter which the court deems relevant to sentence" may be admitted in a capital sentencing hearing, makes Nevada's death penalty scheme unconstitutional as it creates a vague and standardless standard, giving open-ended discretion to the trial court. However, we conclude from the record that the sentencing panel did not rely on anything other than the four aggravating circumstances it found in imposing the death penalty and, thus, Colwell's counsel's argument is irrelevant.

[Headnote 10]

Finally, Colwell's counsel claims that the death penalty is cruel and unusual punishment in all circumstances in violation of the Eighth Amendment and the Nevada Constitution. Colwell's counsel concedes that the United States Supreme Court and this court have repeatedly upheld the general constitutionality of the death penalty under the Eighth Amendment. *See e.g., Bishop,* 95 Nev. at 517-18, 597 P.2d at 276-77. Colwell's counsel merely desires to preserve his argument should this court change its mind. We are not so inclined. We note that this court has also held that the death penalty is not unconstitutional under the

Nevada Constitution. *Id.* Accordingly, we conclude that Colwell's counsel's claim on this issue lacks merit.

In cases in which the death penalty is imposed, this court is statutorily required to consider whether the death sentence was imposed under the influence of passion, prejudice or any arbitrary factor and whether the sentence of death is excessive considering both the crime and the defendant. NRS 177.055(2). We conclude that the death sentence was not imposed under the influence of passion, prejudice or any arbitrary factor, nor was it excessive in this case. The sentencing panel sentenced Colwell to death based upon the aggravating circumstances of the murder. The evidence supports the finding of the aggravating circumstances. Considering these circumstances and the senseless nature of the killing, the sentencing panel's decision that Colwell should be put to death was not excessive.

We affirm Colwell's death sentence.