FREDERICK DEWAYNE HARVEY, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 14253

June 26, 1984                    682 P.2d 1384

*Morgan D. Harris,* Public Defender, and *Robert B. Amundson* and *Michael L. Miller,* Deputy Public Defenders, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Frederick Dewayne Harvey was convicted of first degree murder for the shooting of Dennis McKeon, a security guard, during flight from a robbery of a jewelry store. McKeon was shot several times with a large-caliber handgun as he sat in a car appellant was trying to steal to further his escape. At the penalty phase of the trial, the jury found, as three aggravating circumstances, that the murder occurred during the commission of a felony, was committed to avoid arrest or apprehension, and created a great risk of death to more than one person. The jury also found three mitigating circumstances: appellant's youth, his lack of a prior significant criminal history, and that he suffered from an extreme mental or emotional disturbance at the time of the killing. The jury found the mitigating circumstances insufficient to outweigh the aggravating circumstances, and imposed the penalty of death.

On appeal, Harvey raises numerous assignments of error

speaking to both the guilt and the penalty phases of his trial, as well as to the propriety of imposing the death penalty in this case. The issues have been thoroughly briefed by both parties and reviewed at oral argument. From our review of the briefs, record, and arguments of counsel, as well as our own independent research, we conclude that no prejudicial error occurred at either the guilt or the penalty phases of the trial. We conclude, however, that the death sentence in this case is disproportionate to the penalty imposed in this state in similar cases, and must be set aside.

Even if no prejudicial error occurs at the penalty phase of a capital trial, NRS 177.055(2)(d) requires us to review a death sentence and determine whether it is "disproportionate to the penalty imposed in similar cases in this state, considering both the crime and the defendant." "Proportionality review" dictates that we compare all capital cases, as well as appealed murder cases in which the death penalty was sought but not imposed, and set aside those death sentences which appear comparatively disproportionate to the offense and the background and characteristics of the offender.[1]

The exact scope and methodology of proportionality review involve complex questions that have engendered considerable study. See, e.g., National Center for State Courts, Proportionality Review Project (1983); Baldus, et al., Identifying Comparatively Excessive Sentences of Death: A Quantitative Approach, 33 Stan.L.Rev. 1 (1980). Currently pending before us are several death penalty cases dealing with the precise nature and methods of proportionality review. In our judgment, however, the death sentence in this case is so clearly disproportionate that we need not now engage in more than the simplest form of proportionality review, leaving the more complex questions for resolution in more appropriate appeals.

We have compared Harvey's death sentence with sentences imposed in similar cases while "considering both the crime and the defendant." Harvey's crime, although a tragically violent killing, lacks the degree of heinousness and brutality evidenced in many of the cases in which the ultimate sanction of death has been imposed. See, e.g., Ybarra v. State, 100 Nev. 167, 679

---

[1]The United States Supreme Court has recently held that state courts are not constitutionally required to conduct proportionality review of death sentences. Pulley v. Harris, 104 S.Ct. 871 (1984). We are nevertheless required to continue to conduct such review, however, under the mandate of NRS 177.055(2)(d).

P.2d 797 (1984) (murder committed by igniting flammable liquid poured over victim). Harvey, in flight from the armed robbery of a jewelry store during which no one was injured, sought to abscond in the parked car in which the victim sat. The car belonged to another person and was not a police or security vehicle. In an attempt to steal what appeared to be a private automobile, Harvey found himself in an encounter with an armed and uniformed security officer. Harvey ordered the victim out of the car and then suddenly shot him three times. The record indicates that McKeon was killed under circumstances which suggest the panic of a fleeing felon's sudden encounter with an armed guard, rather than a carefully pre-planned homicide. Indeed, the state's theory of the case was that McKeon was either killed during the commission of a felony or by virtue of Harvey's premeditation and deliberation formed virtually instantaneously at the scene, and in reaction to the sudden encounter.

More importantly, the characteristics of Harvey as a defendant impel our conclusion that his death sentence for this offense is disproportionate. Harvey was sixteen years old at the time of the killing. His counsel on appeal has represented, without challenge by the state, that Harvey is the youngest inmate currently on Nevada's Death Row. Harvey lacks a significant history of prior criminal behavior. Moreover, the jury specifically found that Harvey labored under an extreme mental or emotional disturbance when he committed the murder. We know of no other case in this state where these mitigating circumstances were present and the death penalty was nevertheless imposed on a defendant of Harvey's age.

By way of contrast, the juries did not impose the death penalty in at least two cases which we regard as more deserving of the penalty of death than the case now before us, considering both the circumstances of the crime and the background and characteristics of the offender. *See* Koza v. State, 100 Nev. 245, 681 P.2d 44 (Adv. Opn. No. 48, April 24, 1984); Crew v. State, 100 Nev. 38, 675 P.2d 986 (1984).

*Koza* involved a defendant older than Harvey, convicted of the robbery and first degree murder of a Las Vegas cab driver. The circumstances of that case strongly suggested that Koza and another person armed themselves and took a ride in the victim's cab with the intent to rob him. The driver was later found dead with two gunshot wounds to the back of his head. The circumstances of the killing in *Koza* do not suggest the suddenness of the decision to kill evident in Harvey's case, and readily support the inference that Koza did not kill the driver in a moment of panic, but as part of a pre-formulated plan.

Moreover, an overheard telephone conversation that occurred after the killing indicated that Koza was planning yet another armed robbery with the possibility of the victim's death an active consideration. Koza and his accomplice spoke of luring two men into a car to rob them, and the accomplice stated that if the victims "tried anything" she would "blow their brains out." Koza's jury returned a sentence of life imprisonment without possibility of parole.

*Crew* also involved a defendant older than Harvey. There were indications that Crew had had some prior activity as a drug dealer. Crew's victims were taken to a remote desert area to consummate a drug transaction, where the murders occurred under circumstances suggesting more forethought than that in evidence in this case. Moreover, Crew and his co-participant slit the throats of their victims after they shot them. Although the state sought the death penalty, Crew received only life imprisonment with the possibility of parole.

In our view the *Koza* and *Crew* cases presented circumstances more compelling of the imposition of the death penalty than those of this case. In light of this conclusion, and given appellant's age at the time of the crime and the other mitigating factors, plus the apparent suddenness of the decision to kill, we conclude that the death penalty in this case is disproportionate and must be set aside.

Having found no prejudical error in the guilt phase of the trial, we affirm the judgment of conviction. Under the authority of NRS 177.055(3)(c), we hereby vacate the death sentence and impose in its stead a sentence of life imprisonment without possibility of parole.