JOSEPH DOMINICK BIONDI, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 14771

May 20, 1985                                    699 P.2d 1062

[Rehearing denied December 10, 1985]

*Lovell, Potter & Gewerter,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney; *James Tufteland,* Deputy; *Mitchell M. Cohen,* Deputy, Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

A jury convicted appellant Joseph Biondi of the first degree murder of Timothy Smith with the use of a deadly weapon. The jury found one aggravating circumstance: that Biondi had been convicted of a felony involving the threat of violence to the person of another. The jury sentenced Biondi to death. Biondi has appealed from his judgment of conviction asserting numerous assignments of error which we reject as meritless. We hold, however, that the imposition of the death sentence in the instant case is disproportionate to sentences imposed in similar cases. We therefore vacate Biondi's death sentence, and we impose the sentence of life imprisonment without the possibility of parole.

## THE FACTS

Timothy Smith, a parole officer, was stabbed in the parking lot of a Las Vegas bar in the early morning hours of February 4,

1981. Smith, who was off duty, arrived at the bar around 12:45 a.m. with a friend, Carl Blair. Appellant Biondi and his friends, including Michael Phillips, Ron and Becky Lacey, and Steve Izzi, were in the bar. They were drinking, and they were intoxicated. When in the bar Timothy Smith and Ron Lacey began an argument. They left the bar and went outside to "settle" the dispute. A fight ensued between Timothy Smith and Blair and Ron Lacey. Lacey cut the two men with a knife. After this fight had ended, four of those present saw Timothy Smith struggling with Biondi and Phillips between two parked cars. One of the witnesses, Becky Lacey, testified that Biondi and Phillips each stabbed Smith. Blair testified that only Biondi stabbed Smith. Izzi testified that Biondi held Smith while Phillips stabbed him. Biondi and Phillips fled the scene. Biondi discarded the knife he was carrying. The knife was not recovered. Smith had been stabbed in the chest. He suffered brain death from loss of blood. He was pronounced dead two days later.

Biondi and Phillips were charged with Smith's murder. Phillips pleaded guilty to first degree murder. He was sentenced to life in prison with the possibility of parole. Biondi was transferred to Nevada from California under the Interstate Agreement on Detainers.

The jury found Biondi guilty of first degree murder with the use of a deadly weapon. In the penalty hearing, the jury returned a special verdict finding that Biondi had stabbed Smith. The jury also found that Biondi had been convicted of a crime involving the use of violence, armed robbery. The jury imposed the death penalty. This appeal followed.

## ASSIGNMENTS OF ERROR

1. Biondi alleges several assignments of error. He argues that the district court erred in denying his pre-trial petition for habeas corpus. The petition was predicated upon procedural deficiencies committed by the California authorities in transferring Biondi to Nevada. NRS 178.620 *et seq.* If such procedural violations were committed by the California authorities, they did not bar the State of Nevada from prosecuting Biondi, nor do they invalidate his Nevada conviction. Frisbie v. Collins, 342 U.S. 519, 522 (1952). The pre-trial petition for habeas corpus was properly denied.

2. Appellant asserts that the Information charging him was insufficient. The Information did not specify the degree of murder charged. This Court has held that an "open" murder charge need not specify the degree of murder. Sheriff v. Willoughby, 97 Nev. 90, 92, 624 P.2d 498, 499 (1981); Burns v. Sheriff, 93 Nev. 530, 531, 569 P.2d 407, 408 (1977).

3. Biondi also suggests that the Information did not inform him of the state's theory of "aiding and abetting" in the commission of the murder which theory of the crime was suggested by the prosecution in the state's closing argument. *See* Barren v. State, 99 Nev. 661, 669 P.2d 725 (1983). Biondi was charged in the Information as a principal. Two eyewitnesses testified that Biondi stabbed Smith. Steve Izzi testified that he saw Biondi holding Smith while Phillips stabbed Smith. The prosecutor stated in closing argument that Biondi was guilty either because Biondi and Phillips stabbed Smith or because Biondi aided and abetted Phillips by holding Smith. Biondi argues on appeal that the presentation of this alternative theory by the prosecutor during argument violated this Court's holding in *Barren, supra.* We do not agree. In the instant case, the alternate suggestion that Biondi may have aided and abetted in the murder did not prevent Biondi from preparing his defense to the charge. Biondi's defense was that he was not involved in the fight with Smith. Biondi claimed that he found Smith between two parked cars after he had been stabbed. The jury specifically rejected his defense and found Biondi guilty. In its special verdict at the conclusion of the penalty hearing, the jury found that Biondi had stabbed Smith. We conclude that the prosecutor's comments did not prejudice Biondi. State v. Jones, 96 Nev. 71, 76, 605 P.2d 202, 206 (1980).

4. Appellant also argues that the trial judge abused his discretion in denying the motion for a new trial on the grounds of newly discovered evidence. *See* NRS 176.515(1).[1] The evidence presented was in affidavit form from codefendant Michael Phillips and mailed from the prison where Phillips was serving his life sentence with the possibility of parole for stabbing Smith.

Prior to the jury trial, defense investigator Michael Wysocki had interviewed Phillips in the prison. Phillips had told Wysocki that he and not Biondi had stabbed Smith. Wysocki repeated to the jury Phillips' statement that Phillips had stabbed Smith. Phillips testified that Biondi did not stab Smith, but Phillips denied stabbing Smith himself. In the affidavit Phillips stated that he alone stabbed Smith and that he had lied at trial when he disclaimed any responsibility for the killing. Under these circumstances, the affidavit was not "newly discovered." Porter v. State, 94 Nev. 142, 150, 576 P.2d 275, 280 (1978). Nor did the affidavit constitute evidence which would "probably change the

---

[1] NRS 176.515(1) provides:

> The court may grant a new trial to a defendant if required as a matter of law or on the grounds of newly discovered evidence.

result at trial'' since Phillips' statements exculpating Biondi had been presented to the jury and had been rejected. State v. Crockett, 84 Nev. 516, 519, 444 P.2d 896, 897-98 (1968). We conclude that the trial judge did not abuse his discretion in denying Biondi's motion for a new trial. Lightford v. State, 91 Nev. 482, 483, 538 P.2d 585, 586 (1975).

5. Biondi claims that evidence was erroneously admitted against him in the penalty hearing. The challenged evidence included: a death threat to Becky Lacey, a witness against Biondi at his preliminary hearing, in a voice identified as Biondi's taped on a telephone answering machine; and a taped statement of one Zona Kysar, an acquaintance of Biondi's concerning admissions Biondi made to her in the hours immediately after the stabbing. These taped statements were relevant to Biondi's character and the circumstances of the particular offense. *See* Woodson v. Carolina, 428 U.S. 280 (1976). Neither statement was ''dubious'' or ''tenuous''; therefore, both were properly admitted. Allen v. State, 99 Nev. 485, 488, 665 P.2d 238, 240 (1983) (holding that the evidence admissible against the defendant at the penalty hearing under NRS 175.552 is not limited to evidence of the nine aggravating circumstances outlined in NRS 200.033 but includes other relevant character evidence). Biondi also challenges the admission of testimony of Sherry Richardson, the victim of an armed robbery in California to which Biondi pleaded guilty in 1976. Richardson testified about the events surrounding the robbery including the sexual assault Biondi attempted. Richardson's testimony was admissible since her statements concerning the sexual assault were credible and relevant to Biondi's character. *See Allen, supra.*

6. Finally, appellant asserts that the trial judge erred by reading to the penalty jury an instruction which stated, in part, ''A verdict may never be influenced by sympathy, prejudice, or public opinion.''[2] The penalty jury was correctly instructed to

---

[2]The entire instruction read as follows:

   Although you are to consider only the evidence from the trial and the penalty hearing in reaching a verdict, you must bring to the consideration of the evidence your everyday common sense and judgment as reasonable men and women. Thus, you are not limited solely to what you see and hear as the witnesses testify. You may draw reasonable inferences which you feel are justified by the evidence, keeping in mind that such inferences should not be based on speculation or guess.

   A verdict may never be influenced by sympathy, prejudice or public opinion. Your decision should be the product of sincere judgment and sound discretion in accordance with these rules of law.

consider six specific mitigating factors and "any other circumstances relating to the case or to the defendant, Mr. Biondi, as reasons for not imposing the death sentence."[3] In this contect, the jury instruction was proper. Nevius v. State, 101 Nev. 238, 699 P.2d 1053 (1985).

We have considered the remaining claims of error in the penalty hearing. They are without merit. We affirm Biondi's judgment of conviction, and we perceive no error in the penalty hearing.

## THE PROPORTIONALITY REVIEW

We turn to review the death sentence imposed by the jury to determine if it is "disproportionate to the penalty imposed in similar cases in this state, considering both the crime and the defendant" as mandated by NRS 175.055(2)(d). This Court has previously noted that

> 'proportionality review' dictates that we compare all capital cases, as well as appealed murder cases in which the death penalty was sought but not imposed, and set aside those death sentences which appear comparatively disproportionate to the offense and the background and characteristics of the offender.

Harvey v. State, 100 Nev. 340, 342, 682 P.2d 1384, 1385 (1984). Having compared the crime committed by Biondi with similar cases, including the identical crime committed by codefendant Michael Phillips, who also stabbed Smith and was sentenced to

---

[3]The jury was instructed to consider the following factors in mitigation:

(1) that the defendant has no significant history of prior criminal activity (2) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance (3) the victim was a participant in the defendant's criminal conduct or consented to the act (4) the defendant was an accomplice in a murder committed by another person and his participation in the murder was relatively minor (5) the defendant acted under duress or under the domination of another person (6) the youth of the defendant at the time of the crime.

The jury was further instructed:

However, the mitigating circumstances which I have read for your consideration are given to you merely as examples of some of the factors that you may take into account as reasons for deciding not to impose a death sentence upon Mr. Biondi. You should pay careful attention to each of those factors. Any one of them may be sufficient, standing alone, to support a decision that death is not the appropriate punishment in this case. But you should not limit your consideration of mitigating circumstances to these specific factors.

You may also consider any other circumstances relating to the case or to the defendant, Mr. Biondi, as reasons for not imposing the death sentence.

life imprisonment with the possibility of parole, we must conclude that the death sentence in this instance is disproportionate and therefore shall be set aside.

Biondi's crime, although violent, occurred in the context of a barroom confrontation among opposing strangers who were substantially intoxicated and emotional. Tempers flared, challenges were issued and a death occurred. While we do not in any sense condone such a senseless killing, we are nevertheless convinced that our course is clear under the proportionality mandate of the statute. Smith was stabbed in one of a series of fights which erupted between the intoxicated patrons of a bar: there was no evidence that the murder had been planned in advance. *See Harvey, supra* (sixteen-year-old defendant shot and killed a security guard in a panic while trying to flee from the scene of an armed robbery; death penalty reduced to life in prison without the possibility of parole). Biondi had one prior conviction for a violent crime, armed robbery. This was unlike the series of crimes committed by the defendant in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985) (defendant shot and killed his girl friend and stole a car before the killing for which he received death; death penalty affirmed).

Even more strikingly significant, however, is the comparison between Biondi, who was sentenced to death, and codefendant Phillips, who was sentenced to life in prison with the possibility of parole, *for the very same crime.* Phillips was allowed to plead guilty to first degree murder for stabbing Smith. Biondi and Phillips each had one prior felony conviction for a violent crime: Biondi pleaded guilty to armed robbery in 1976; Phillips was convicted in 1977 or 1978 for assault with a deadly weapon. Biondi's participation in the murder was no more significant than Phillips'. In fact, one eyewitness testified that Biondi had held Smith while Phillips stabbed him. The state has provided no explanation for its decision to allow Phillips to plead guilty and be sentenced to life with the possibility of parole but to seek the death penalty for Biondi.[4] Nor does any justification for this disparity appear in the record. This is a case where similar defendants were sentenced differently for the identical crime. For this reason, and for the reasons discussed above, we hold the

---

[4]Biondi had other prior convictions for nonviolent crimes: mail fraud, bail jumping, and writing bad checks. Whether Phillips had other prior convictions is not in the record. In any event, the state did not attempt to justify the disparity in the sentences received by Biondi and Phillips by Biondi's nonviolent convictions.

death penalty imposed on Biondi is disproportionate. We hereby vacate it and impose a sentence of life imprisonment without the possibility of parole. NRS 177.055(3)(c).[5]

---

[5]NRS 177.055(3) provides, in part: "The Supreme Court when reviewing a death sentence, may: (c) Set aside the sentence of death and impose the sentence of imprisonment for life without possibility of parole."