*810
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a district court order denying a post-conviction petition for a writ of habeas corpus. Appellant Lawrence Colwell, Jr., faces a death sentence. He contends for various reasons that the district court erred in denying his habeas petition without holding an evidentiary hearing. We conclude that this contention lacks merit. He also contends that his sentencing by a three-judge panel violated his Sixth Amendment right to a jury trial under a recent United States Supreme Court decision,
 
 Ring v.
 
 Arizona.
 
 [1]
 
 We conclude that
 
 Ring
 
 does not apply here. We therefore affirm the district court’s order.
 

 
 *811
 

 FACTS
 

 On March 10, 1994, appellant Lawrence Colwell and his girlfriend, Merillee Paul, robbed and murdered a seventy-six-year-old man at the Tropicana Hotel in Las Vegas. Paul went with the victim to his room on the pretext of having sex with him. She then let Colwell into the room. He handcuffed and strangled the victim with a belt.
 

 Colwell and Paul made their way to Oregon, where Paul turned herself in to authorities. She eventually agreed to plead guilty to first-degree murder and testify against Colwell; in exchange, the State recommended she receive a sentence of life with the possibility of parole.
 

 After Colwell was arrested and arraigned, the State informed the district court it would not be seeking the death penalty. However, Colwell offered to plead guilty to all charges if the State changed its position and sought the death penalty. The State agreed and filed a notice of intent to seek death. Colwell also sought to represent himself. After canvassing Colwell on the matter, the court allowed him to represent himself but appointed standby counsel.
 

 Colwell pleaded guilty to murder in the first degree, burglary, and robbery of a victim 65 years of age or older. He requested that the penalty hearing be conducted as soon as possible. During a two-day penalty hearing before a three-judge panel, Colwell did not conduct meaningful cross-examination of the State’s witnesses and even attempted to elicit damaging evidence not presented by the prosecution. He made no objections to the State’s evidence and refused to introduce any mitigating evidence. During closing argument, the State argued the existence of seven aggravating factors and the nonexistence of any mitigating evidence. Colwell asked that he be put to death. Before returning a sentence, the panel gave Colwell another chance to introduce mitigating evidence; he declined. The panel found four aggravating circumstances, found no mitigating circumstances, and sentenced Colwell to death.
 

 This court affirmed his conviction and sentence.
 
 [2]
 

 DISCUSSION
 

 I.
 
 The district judge had jurisdiction to consider appellant’s habeas petition
 

 In supplemental points and authorities, Colwell claims that District Judge Donald M. Mosley lacked jurisdiction to consider Colwell’s habeas petition. He cites NRS 34.820(3), which pro
 
 *812
 
 vides: “If the petitioner has previously filed a petition for relief or for a stay of the execution in the same court, the petition must be assigned to the judge or justice who considered the previous matter.” The record indicates that on September 18, 1995, District Judge Gene T. Porter granted Colwell’s motion for a stay of execution following Colwell’s conviction and pending his direct appeal. Colwell therefore argues that NRS 34.820 required Judge Porter to hear his instant petition.
 

 Colwell failed to raise this claim with the district court, and we need not address it absent a showing of cause for the failure and prejudice.
 
 [3]
 
 On the other hand, subject-matter jurisdiction is not waivable, and a court’s lack of such jurisdiction can be raised for the first time on appeal.
 
 [4]
 
 But even assuming that NRS 34.820(3) was violated here, Colwell has cited no authority for concluding that such a violation deprives a district judge of subject-matter jurisdiction, and we reject that proposition. We also conclude that he has not shown cause for failing to raise this claim below or that he was prejudiced.
 

 II.
 
 The district court did not err in denying appellant post-conviction habeas relief
 

 A petitioner for post-conviction relief cannot rely on conclu-sory claims for relief but must make specific factual allegations that if true would entitle him to relief.
 
 [5]
 
 The petitioner is not entitled to an evidentiary hearing if the record belies or repels the allegations.
 
 [6]
 
 It is proper to raise claims of ineffective assistance of trial or appellate counsel initially in a timely, first post-conviction petition for a writ of habeas corpus.
 
 [7]
 
 Additionally, the law of a first appeal is the law of the case in all later appeals in which the facts are substantially the same; this doctrine cannot be avoided by more detailed and precisely focused argument.
 
 [8]
 

 
 *813
 
 Colwell contends that his trial attorneys were ineffective (before he was allowed to represent himself) because they did not have him psychologically evaluated and did not inform the district court that he suffered from prior serious mental instabilities. To establish ineffective assistance of counsel, a defendant must show that an attorney’s representation fell below an objective standard of reasonableness and that the attorney’s deficient performance prejudiced the defense.
 
 [9]
 
 To establish prejudice, the defendant must show that but for the attorney’s mistakes, there is a reasonable probability that the result of the proceeding would have been different.
 
 [10]
 
 An attorney must make reasonable investigations or a reasonable decision that particular investigations are unnecessary.
 
 [11]
 

 In rejecting this claim, the district court relied on affidavits obtained from Colwell’s former attorneys after he filed his habeas petition. This was improper. Such expansion of the record is allowed only if the court decides to conduct an evidentiary hearing.
 
 [12]
 
 We have not considered these affidavits in deciding this issue. Colwell’s claim fails because it remains vague and lacks specific factual allegations that would entitle him to relief even if true. Although he implies that he lacked competency to be tried or to represent himself, he refers only to testimony by a psychiatrist called by the State at his penalty hearing. According to Colwell,
 
 [13]
 
 this psychiatrist evaluated him after he was found guilty of kidnapping in Oregon and concluded that he suffered from a “severe personality disorder.” He alleges no other facts to support his claim. Colwell does not argue that the personality disorder rendered him incompetent: incompetency to stand trial means that a “person is not of sufficient mentality to be able to understand the nature of the criminal charges against him, and because of that insufficiency, is not able to aid and assist his counsel.”
 
 [14]
 
 Colwell has not stated a claim that would warrant relief.
 

 
 *814
 
 Colwell also challenges the adequacy of the district court’s canvass under
 
 Faretta v. California
 

 [15]
 

 in allowing him to represent himself because the court did not inquire into his competency. To the extent that this is asserted as an independent claim of trial court error, it is waived because it could have been presented to the trial court or raised on direct appeal.
 
 [16]
 
 However, the
 
 Faretta
 
 canvass of Colwell is relevant in that it repels his claim that his counsel should have had him psychologically evaluated. The court indeed did not question Colwell regarding his mental competency, and this was reasonable because nothing in the transcript of the canvass suggests that he lacked competency. On the contrary, the record before us shows that Colwell consistently spoke in a lucid, coherent, and appropriate manner.
 

 Colwell further faults his trial attorneys for not filing appropriate pretrial motions. This claim remains conclusory; he does not show that any of the motions would have been meritorious. So again he fails to provide specific allegations and argument that would warrant relief. Moreover, he neglects to reconcile his present call for pretrial action by his attorneys with his prior decision to forgo counsel and represent himself.
 

 Next, Colwell asserts that the three-judge panel that sentenced him did not make an independent and objective analysis of all the relevant evidence to determine if mitigating circumstances existed. He says that this was error under
 
 Hollaway
 
 v.
 
 State.
 

 [17]
 

 Colwell does not state any cause for not raising this alleged error before with the panel or on direct appeal; it is therefore waived.
 
 [18]
 
 Furthermore, Colwell fails to demonstrate prejudice: our concern in
 
 Hollaway
 
 is not implicated here. In
 
 Hollaway,
 
 we concluded that ‘ ‘under the circumstances of this case, ... the jury required further instruction regarding its responsibilities in assessing the evidence during the penalty phase.”
 
 [19]
 
 Here, no jury was involved, and we presume that the sentencing judges understood and met their responsibilities.
 
 [20]
 
 Colwell has not shown that their finding of no mitigating circumstances was unfounded.
 

 
 *815
 
 Colwell also states no cause why we should consider his remaining grounds for habeas relief, which were either already decided on direct appeal or could have been raised at trial or on direct appeal. We therefore decline to address the following claims:
 
 [21]
 
 Colwell’s rights were violated under the Equal Protection Clause because his female codefendant received only a prison sentence; Nevada’s capital punishment system operates in an arbitrary and capricious manner; the death penalty is cruel and unusual punishment; death by lethal injection is cruel and unusual punishment; and his conviction and sentence are invalid under the International Covenant on Civil and Political Rights.
 

 III. Ring v. Arizona
 
 does not affect the validity of the three-judge panel’s imposition of the death penalty in this case
 

 On June 24, 2002, after briefing in this case was concluded, the United States Supreme Court issued an opinion in
 
 Ring
 
 v.
 
 Arizona
 
 holding that a capital sentencing scheme which places the determination of aggravating circumstances in the hands of a judge violates the Sixth Amendment right to a jury trial.
 
 [22]
 
 We therefore permitted supplemental briefing on the question of
 
 Ring’s
 
 effect on this case and directed the parties to address specifically whether
 
 Ring
 
 applies retroactively. We conclude for two reasons that
 
 Ring
 
 does not apply here.
 

 At issue in
 
 Ring
 
 was Arizona’s capital sentencing scheme, in which, “following a jury adjudication of a defendant’s guilt of first-degree murder, the trial judge, sitting alone, determines the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty.”
 
 [23]
 
 The Supreme Court observed that its prior case law dealing with noncapital crimes had established that “the Sixth Amendment does not permit a defendant to be ‘expose[d] ... to a penalty
 
 exceeding
 
 the maximum he would receive if punished according to the facts reflected in the jury verdict alone.’ ”
 
 [24]
 
 “If a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.”
 
 [25]
 
 Applying this principle to capital cases and overruling contrary precedent, the Court concluded that it was impermissible for
 

 
 *816
 
 a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. Because Arizona’s enumerated aggravating factors operate as “the functional equivalent of an element of a greater offense,” the Sixth Amendment requires that they be found by a jury.
 
 [26]
 

 Colwell contends that
 
 Ring
 
 compels us to overturn his death sentence, which was determined by a three-judge panel. We disagree. We conclude both that
 
 Ring
 
 does not require retroactive application and that it is distinguishable on its facts since Colwell waived his right to a jury trial.
 

 A. Ring
 
 does not apply retroactively
 

 We decline to apply
 
 Ring
 
 retroactively on collateral review. In the following discussion, we address recent United States Supreme Court case law on retroactivity, adopt a new framework for retroactivity analysis in this state, and apply it to this case.
 

 U.S. Supreme Court case law and retroactivity in Nevada
 

 In regard to convictions like Colwell’s which have become final before the promulgation of a new constitutional rule, “the Constitution neither prohibits nor requires retrospective effect.’ ’
 
 [27]
 
 Beginning with
 
 Teague v. Lane
 
 in 1989, the Supreme Court established a general requirement of nonretroactivity of new rules in federal collateral review.
 
 [28]
 
 This requirement replaced an earlier, more open-ended retroactivity analysis which the Court had applied to each new constitutional rule, considering the purpose served by the new rule, the extent of reliance by law-enforcement authorities on the old rule, and the effect on the administration of justice of applying the new rule retroactively.
 
 [29]
 

 We have followed the Supreme Court’s earlier analysis in our own case law.
 
 [30]
 
 The parties cited both this case law and
 
 Teague
 
 in their supplemental briefs. This court has also cited
 
 Teague,
 
 but we have not formally adopted its approach or even discussed the issue of retroactivity in light of it and its progeny.
 
 [31]
 
 Such a discussion is in order.
 

 
 *817
 
 In
 
 Teague,
 
 the Supreme Court, instead of focusing on the purpose and impact of a new constitutional rule, looked to the function of federal habeas review, which is to ensure that state courts conscientiously follow federal constitutional standards. The Court determined that this function is met by testing state convictions against the constitutional law recognized at the time of trial and direct appellate review, since state courts can only be expected to follow the law existing at the time of their decisions. Applying the law existing at that time also promotes finality in criminal prosecutions. Therefore, once a conviction has become final, federal habeas courts should generally not interfere with the state courts by applying new rules retroactively. The Court recognized two exceptions to this general requirement of nonretroactivity.
 
 [32]
 

 The first exception is a new rule placing “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.”
 
 [33]
 
 An example of this would be the Supreme Court’s holding that the Fourteenth Amendment prohibits states from criminalizing marriages between persons of different races.
 
 [34]
 
 Such a rule is actually substantive, not procedural.
 
 [35]
 
 This exception also covers “rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.”
 
 [36]
 
 An example of this is the Supreme Court’s recent holding that the Eighth Amendment prohibits the execution of mentally retarded criminals.
 
 [37]
 
 The second exception is a new rule establishing a procedure that “implicate[s] the fundamental fairness of the trial”
 
 [38]
 
 and “without which the likelihood of an accurate conviction is seriously diminished.”
 
 [39]
 
 Such a rule would be the right to counsel at trial.
 
 [40]
 
 If a rule falls within either of these exceptions, it applies even on collateral review of final cases.
 

 Teague
 
 is not controlling on this court, other than in the minimum constitutional protections established by its two exceptions.
 
 *818
 
 In other words, we may choose to provide broader retroactive application of new constitutional rules of criminal procedure than
 
 Teague
 
 and its progeny require. The Supreme Court has recognized that states may apply new constitutional standards “in a broader range of cases than is required” by the Court’s decision not to apply the standards retroactively.
 
 [41]
 
 As the Oregon Supreme Court has stated: “we are free to choose the degree of retroac-tivity or prospectivity which we believe appropriate to the particular rule under consideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires.”
 
 [42]
 

 The policy concerns behind
 
 Teague
 
 are partly germane to collateral review by this and other state courts and partly not. We share the concern that the finality of convictions not be unduly disturbed, but the need to prevent excessive interference by federal habeas courts has no application to habeas review by state courts themselves. And even the effect on finality is not as extreme when a state appellate court, as opposed to a federal court, decides to apply a rule retroactively: first, the decision affects only cases within that state, and second, most state collateral review occurs much sooner than federal collateral review. In addition, we are concerned with encouraging the district courts of this state to strive for perspicacious, reasonable application of constitutional principles in cases where no precedent appears to be squarely on point.
 

 Though we consider the approach to retroactivity set forth in
 
 Teague
 
 to be sound in principle, the Supreme Court has applied it so strictly in practice that decisions defining a constitutional safeguard rarely merit application on collateral review. First, the Court defines a “new rule” quite expansively. In
 
 Teague,
 
 the Court originally stated that “a case announces a new rule when it breaks new ground or imposes a new obligation on the States” or “if the result was not
 
 dictated
 
 by precedent.”
 
 [43]
 
 But the Court now deems a decision new even when it is “controlled” or “governed” by prior law
 
 [44]
 
 and is “the most reasonable” interpretation of that law, unless
 
 “no other
 
 interpretation was reasonable.”
 
 [45]
 
 So
 
 *819
 
 most rules are considered new and given only prospective effect, absent an exception. Second, the two exceptions are narrowly drawn. As noted, one applies when “primary, private individual conduct” has been placed beyond criminal proscription.
 
 [46]
 
 The other is limited to “watershed rules of fundamental fairness.”
 
 [47]
 
 ‘ ‘A rule that qualifies under this exception must not only improve accuracy, but also alter our understanding of the
 
 bedrock procedural elements
 
 essential to the fairness of a proceeding.”
 
 [48]
 
 It is “unlikely that many such components of basic due process have yet to emerge.”
 
 [49]
 

 We appreciate that strictly constraining retroactivity serves the Supreme Court’s purpose of circumscribing federal habeas review of state court decisions, but as a state court we choose not to bind quite so severely our own discretion in deciding retroactivity. We therefore choose to adopt with some qualification the approach set forth in
 
 Teague.
 
 We adopt the general framework of
 
 Teague,
 
 but reserve our prerogative to define and determine within this framework whether a rule is new and whether it falls within the two exceptions to nonretroactivity (as long as we give new federal constitutional rules at least as much retroactive effect as
 
 Teague
 
 does).
 

 Thus, consistent with the
 
 Teague
 
 framework, we will not apply a new constitutional rule of criminal procedure to finalized cases unless it falls within either of two exceptions. There is no bright-line rule for determining whether a rule is new, but there are basic guidelines to follow. As this court has stated, “When a decision merely interprets and clarifies an existing rule . . . and does not announce an altogether new rule of law, the court’s interpretation is merely a restatement of existing law.’ ’
 
 [50]
 
 Similarly, a decision is not new if “it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law.”
 
 [51]
 
 We consider too sweeping the proposition, noted above, that a rule is new whenever any other reasonable interpretation of prior law was possible. However, a rule is new, for example, when the decision announcing it overrules precedent,
 
 [52]
 
 “or disapprove^] a practice this Court had arguably sanctioned in prior cases, or
 
 *820
 
 overturn[s] a longstanding practice that lower courts had uniformly approved.”
 
 [53]
 

 When a rule is new, it will still apply retroactively in two instances: (1) if the rule establishes that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense; or (2) if it establishes a procedure without which the likelihood of an accurate conviction is seriously diminished. These are basically the exceptions defined by the Supreme Court. But we do not limit the first exception to ‘‘primary, private individual” conduct, allowing the possibility that other conduct may be constitutionally protected from criminalization and warrant retroactive relief. And with the second exception, we do not distinguish a separate requirement of “bedrock” or “watershed” significance: if accuracy is seriously diminished without the rule, the rule is significant enough to warrant retroactive application.
 

 We feel that this adaptation of the approach taken in
 
 Teague
 
 and its progeny provides us with a fair and straightforward framework for determining retroactivity.
 

 An overview of retroactivity analysis and its application to appellant’s case
 

 A court’s determination of retroactivity in this state, therefore, requires the following analysis. The first inquiry for the court is whether the constitutional rule of criminal procedure under consideration is new. Retroactivity is an issue only when a rule is new. If a rule is not new, then it applies even on collateral review of final cases.
 

 If the rule is indeed new, the second inquiry is whether the conviction of the person seeking application of the rule has become final. A conviction becomes final when judgment has been entered, the availability of appeal has been exhausted, and a petition for certiorari to the Supreme Court has been denied or the time for such a petition has expired.
 
 [54]
 
 When a conviction is not final, the court must apply a new rule of federal constitutional law: “failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.’ ’
 
 [55]
 

 
 *821
 
 If the person’s conviction has become final, a new rule generally does not apply retroactively. So the third inquiry is whether either exception to nonretroactivity pertains. Did the rule establish that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense? Or did it establish a procedure without which the likelihood of an accurate conviction is seriously diminished? If the answer to either question is yes, then the rule applies.
 

 In Colwell’s case, our first inquiry is whether the constitutional rule of criminal procedure established in
 
 Ring
 
 is new. We determine that the rule is new.
 
 Ring
 
 applied prior case law — which had established the principle that a jury must find any fact (other than a prior conviction) that increases the maximum penalty for an offense — to closely analogous facts. This would suggest that
 
 Ring
 
 did not announce a new rule, but
 
 Ring
 
 also had to address another prior opinion which had held that this principle was inapposite to Arizona’s capital sentencing scheme. The Court concluded that this prior opinion was untenable and overruled it.
 
 [56]
 
 Because
 
 Ring
 
 dealt with conflicting prior authority and expressly overruled precedent in announcing its rule, we conclude that the rule is new.
 

 Next, we must determine whether Colwell’s conviction was final before
 
 Ring
 
 was published earlier this year. It clearly was: after this court affirmed Colwell’s conviction on appeal, the Supreme Court denied certiorari in 1998.
 
 [57]
 
 Because the rule is new and Colwell’s conviction is final, the rule does not apply retroactively here unless either exception to nonretroactivity pertains. We conclude that neither does.
 

 Ring
 
 did not forbid either the criminalization of any conduct or the punishment in any way of any class of defendants, so only the second exception arguably applies.
 
 Ring
 
 established that jurors, not judges, must make any factual findings necessary for imposition of the death penalty. Is this a procedure without which the likelihood of an accurate conviction — or, in this case, sentence— is seriously diminished? We conclude that it is not. The Supreme Court in
 
 Ring
 
 did not determine that factfinding by either juries or judges was superior in capital cases. In response to Arizona’s suggestion that judicial factfinding might better protect against arbitrary imposition of the death penalty, the Court stated: “The Sixth Amendment jury trial right, however, does not turn on the
 
 *822
 
 relative rationality, fairness, or efficiency of potential factfind-ers.”
 
 [58]
 
 The Court did declare that “the superiority of judicial factfinding in capital cases is far from evident” and noted that most states have entrusted factfinding in capital cases to juries.
 
 [59]
 
 But we believe it is clear that
 
 Ring
 
 is based simply on the Sixth Amendment right to a jury trial, not on a perceived need to enhance accuracy in capital sentencings, and does not throw into doubt the accuracy of death sentences handed down by three-judge panels in this state. We conclude therefore that the likelihood of an accurate sentence was not seriously diminished simply because a three-judge panel, rather than a jury, found the aggravating circumstances that supported Colwell’s death sentence.
 

 We conclude that retroactive application of
 
 Ring
 
 on collateral review is not warranted.
 

 B. Ring
 
 does not apply here because appellant waived his right to a jury trial
 

 Alternatively, we conclude that
 
 Ring
 
 is not applicable to Colwell’s case because, unlike Ring, Colwell pleaded guilty and waived his right to a jury trial.
 

 The district court thoroughly canvassed Colwell at the time he entered his guilty plea. The court specifically asked him if he understood that “this matter will be submitted to a three-judge panel to determine the appropriate sentence regarding the count of murder,”
 
 [60]
 
 and he answered yes. The court further informed Colwell that by pleading guilty he was giving up certain valuable rights. The court described these rights, beginning with “a right to a speedy and public trial by an impartial jury.” The court asked Colwell if he understood these rights and if he gave them up, and he answered yes to both questions.
 

 In his supplemental brief on this issue, Colwell does not dispute that his guilty plea was voluntary and knowing or that he waived his right to a jury trial. However, he claims that he only waived his right to have a jury determine his guilt, not his right to have a jury determine aggravating circumstances. The record clearly belies this claim. The record shows that Colwell was aware that if he pleaded guilty a three-judge panel would determine his sentence. He did not object to this, nor did he try to limit or condition in any way his waiver of his right to a jury trial.
 

 
 *823
 

 Ring
 
 concerned a defendant who pleaded not guilty and went to trial; it does not address waiver of the right to a jury trial. We do not read
 
 Ring
 
 as altering the legitimacy or effect of a defendant’s guilty plea. The Supreme Court has held that the valid entry of a guilty plea in a state criminal court involves the waiver of several federal constitutional rights.
 
 [61]
 
 Among these “is the right to trial by jury.”
 
 [62]
 
 Colwell’s guilty plea included an express waiver of his right to a jury trial and was valid. We conclude that nothing in
 
 Ring
 
 undermines the lawfulness of his resulting conviction and sentence.
 
 [63]
 

 CONCLUSION
 

 We affirm the district court’s order denying Colwell’s post-conviction petition for a writ of habeas corpus.
 

 [1]
 

 536 U.S. 584 (2002).
 

 [2]
 

 Colwell v. State,
 
 112 Nev. 807, 919 P.2d 403 (1996).
 

 [3]
 

 See McNelton
 
 v.
 
 State,
 
 115 Nev. 396, 416, 990 P.2d 1263, 1276 (1999) (refusing to address claims that were raised for first time on appeal from district court’s denial of post-conviction petition for habeas corpus, absent showing of good cause and prejudice for failing to include issues in initial petition).
 

 [4]
 

 Swan v. Swan,
 
 106 Nev. 464, 469, 796 P.2d 221, 224 (1990).
 

 [5]
 

 Evans
 
 v.
 
 State,
 
 117 Nev. 609, 621, 28 P.3d 498, 507 (2001).
 

 [6]
 

 Id.
 

 [7]
 

 Id.
 
 at 622, 28 P.3d at 507.
 

 [8]
 

 Hall
 
 v.
 
 State,
 
 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).
 

 [9]
 

 Strickland v. Washington,
 
 466 U.S. 668, 687-88 (1984).
 

 [10]
 

 Id.
 
 at 694.
 

 [11]
 

 Id.
 
 at 691.
 

 [12]
 

 See Mann v. State,
 
 118 Nev. 351, 354-55, 46 P.3d 1228, 1231 (2002).
 

 [13]
 

 Colwell’s counsel, Christopher R. Oram, did not provide this court with a transcript of this testimony. We caution counsel to comply with the relevant rules in providing the necessary record on appeal in future cases.
 
 See
 
 NRAP 30(b)(3), (g)(2);
 
 see also
 
 NRAP 10(b); NRAP 28(e).
 

 [14]
 

 NRS 178.400(2);
 
 see also Dusky
 
 v.
 
 United States,
 
 362 U.S. 402, 402 (1960);
 
 cf. Bridges
 
 v.
 
 State,
 
 116 Nev. 752, 769, 6 P.3d 1000, 1012 (2000) (stating that a defendant with narcissistic personality disorder can be competent and capable of self-representation).
 

 [15]
 

 422 U.S. 806 (1975).
 

 [16]
 

 Franklin
 
 v.
 
 State,
 
 110 Nev. 750, 877 P.2d 1058 (1994),
 
 overruled in part on other grounds by Thomas v. State,
 
 115 Nev. 148, 979 P.2d 222 (1999).
 

 [17]
 

 116 Nev. 732, 6 P.3d 987 (2000).
 

 [18]
 

 Franklin,
 
 110 Nev. 750, 877 P.2d 1058.
 

 [19]
 

 116 Nev. at 743, 6 P.3d at 995.
 

 [20]
 

 See Jones
 
 v.
 
 State,
 
 107 Nev. 632, 636, 817 P.2d 1179, 1181 (1991) (“[T]rial judges are presumed to know the law and to apply it in making their decisions.”).
 

 [21]
 

 Hall,
 
 91 Nev. at 315-16, 535 P.2d at 798-99;
 
 Franklin,
 
 110 Nev. 750, 877 P.2d 1058.
 

 [22]
 

 536 U.S. 584.
 

 [23]
 

 Id.
 
 at 588.
 

 [24]
 

 Id.
 
 at 588-89 (quoting
 
 Apprendi
 
 v.
 
 New Jersey,
 
 530 U.S. 466, 483 (2000)).
 

 [25]
 

 Id.
 
 at 602.
 

 [26]
 

 Id.
 
 at 609 (citation omitted) (overruling in part
 
 Walton v. Arizona,
 
 497 U.S. 639 (1990)) (quoting
 
 Apprendi,
 
 530 U.S. at 494 n.19).
 

 [27]
 

 Linkletter v. Walker,
 
 381 U.S. 618, 628-29 (1965).
 

 [28]
 

 489 U.S. 288, 299-310 (1989) (plurality opinion). A majority of the Court soon adopted
 
 Teague. See, e.g., Butler v. McKellar,
 
 494 U.S. 407, 412 (1990).
 

 [29]
 

 See, e.g., Stovall
 
 v.
 
 Denno,
 
 388 U.S. 293, 297 (1967).
 

 [30]
 

 See, e.g., Powell
 
 v.
 
 Sheriff,
 
 85 Nev. 684, 688, 462 P.2d 756, 758 (1969).
 

 [31]
 

 See Murray v. State,
 
 106 Nev. 907, 910, 803 P.2d 225, 227 (1990).
 

 [32]
 

 See Teague,
 
 489 U.S. at 305-10.
 

 [33]
 

 Id.
 
 at 311 (internal quotation marks omitted).
 

 [34]
 

 See Mackey v. United States,
 
 401 U.S. 667, 692 & n.7 (1971) (Harlan, J., concurring and dissenting) (citing
 
 Loving
 
 v.
 
 Virginia,
 
 388 U.S. 1 (1967) as an example of the first exception). Justice Harlan’s basic view was adopted in
 
 Teague.
 

 [35]
 

 See id.
 
 at 692.
 

 [36]
 

 Penry v. Lynaugh,
 
 492 U.S. 302, 330 (1989),
 
 overruled on other grounds by Atkins
 
 v.
 
 Virginia,
 
 536 U.S. 304 (2002).
 

 [37]
 

 See id.; Atkins,
 
 536 U.S. at 321.
 

 [38]
 

 Teague,
 
 489 U.S. at 312.
 

 [39]
 

 Id.
 
 at 313.
 

 [40]
 

 See Mackey,
 
 401 U.S. at 694 (Harlan, J., concurring and dissenting).
 

 [41]
 

 Johnson
 
 v.
 
 New Jersey,
 
 384 U.S. 719, 733 (1966). This is a corollary of the elementary rule that “States are free to provide greater protections in their criminal justice
 
 system
 
 than
 
 the
 
 Federal Constitution requires.”
 
 California v. Ramos,
 
 463 U.S. 992, 1013-14 (1983).
 

 [42]
 

 State v. Fair,
 
 502 P.2d 1150, 1152 (Or. 1972);
 
 see also Cowell
 
 v.
 
 Leapley,
 
 458 N.W.2d 514, 517-18 (S.D. 1990) (rejecting the
 
 Teague
 
 rule of retroac-tivity as unduly narrow for state collateral review).
 

 [43]
 

 Teague,
 
 489 U.S. at 301.
 

 [44]
 

 Butler,
 
 494 U.S. at 415.
 

 [45]
 

 Lambrix
 
 v.
 
 Singletary,
 
 520 U.S. 518, 538 (1997).
 

 [46]
 

 Teague,
 
 489 U.S. at 311.
 

 [47]
 

 Sawyer v. Smith,
 
 497 U.S. 227, 242 (1990).
 

 [48]
 

 Id. (internal quotation marks omitted).
 

 [49]
 

 Teague,
 
 489 U.S. at 313.
 

 [50]
 

 Buffington
 
 v.
 
 State,
 
 110 Nev. 124, 127, 868 P.2d 643, 645 (1994).
 

 [51]
 

 Penry,
 
 492 U.S. at 314 (internal quotation marks omitted).
 

 [52]
 

 Hubbard v. State,
 
 112 Nev. 946, 948 n.1, 920 P.2d 991, 993 n.l (1996).
 

 [53]
 

 Griffith v. Kentucky,
 
 479 U.S. 314, 325 (1987).
 

 [54]
 

 Id. at 321 n.6.
 

 [55]
 

 Id.
 
 at 322;
 
 see also id.
 
 at 328.
 

 [56]
 

 See Ring,
 
 536 U.S. at 609 (overruling in part
 
 Walton,
 
 497 U.S. 639).
 

 [57]
 

 Colwell,
 
 112 Nev. 807, 919 P.2d 403,
 
 cert. denied,
 
 525 U.S. 844 (1998).
 

 [58]
 

 Ring,
 
 536 U.S. at 607.
 

 [59]
 

 Id.
 
 at 607-08 & n.6.
 

 [60]
 

 See
 
 NRS 175.558 (providing that when a defendant pleads guilty to first-degree murder and the State seeks a death sentence, a panel of three district judges must “conduct the required penalty hearing to determine the presence of aggravating and mitigating circumstances, and give sentence accordingly”).
 

 [61]
 

 Boykin
 
 v.
 
 Alabama,
 
 395 U.S. 238, 243 (1969).
 

 [62]
 

 Id.
 

 [63]
 

 Cf. Abrego
 
 v.
 
 State,
 
 118 Nev. 54, 60-61, 38 P.3d 868, 871-72 (2002) (concluding that a defendant effectively waived his right under
 
 Apprendi
 
 to have the jury determine a sentence-enhancing fact).
 

 We express no opinion on the effect
 
 Ring
 
 might have if applied in a case where a capital defendant pleaded guilty but unsuccessfully sought to have a jury determine his sentence.