DARYL LINNIE MACK, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40167

September 8, 2003                                      75 P.3d 803

*Michael R. Specchio,* Public Defender, and *John Reese Petty,* Chief Deputy Public Defender, Washoe County, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

Before the Court EN BANC.

## OPINION[1]

*Per Curiam:*

Appellant Daryl Linnie Mack does not challenge his conviction of first-degree murder but claims that his death sentence was determined by a three-judge panel in violation of his constitutional right to a jury trial. We conclude that Mack's claim lacks merit because he requested a bench trial and waived his right to a jury trial.

### FACTS

On the night of October 28, 1988, Betty May was found dead in her basement room at a boarding house in Reno. Steven Floyd lived in the house next door with the managers of the boarding house, Jim and Kelly Bassett. Floyd had been drinking at a nearby bar that night and was returning home to try to borrow some money. He knew May and saw that her light was on, so he went to her room to ask for money. He knocked on her door, which was slightly open, but there was no response. He opened the door and saw May kneeling by her bed with her upper body facedown on the bed. He turned her over and realized that she was dead. Floyd immediately went home and told the Bassetts, and the police were called.

An autopsy was performed the next morning. Fingernail scrapings and evidentiary swabs from May's vagina and left foot were collected. The swabs tested positive for semen. There were abrasions on May's neck, bruises on her inner thighs, lacerations of her fingertips, lips, and nose, blood in her vagina, and a hemorrhage within her cervix. May was wearing a blue blouse, which was

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

bloodstained. The medical experts at trial all agreed that she had been manually strangled to death. An expert for the State testified that May had suffered forceful traumatic sexual penetration not long before her death.

Almost twelve years later, Detective David Jenkins took over investigation of the case and requested DNA testing of the evidence. Police had taken a blood sample from Mack in 1994. In February 2001, Jenkins also obtained a saliva sample from Mack pursuant to a seizure order. A criminalist for the Washoe County Sheriff testified that the semen taken from May's body and the blood stains on her blouse matched Mack's DNA profile. The blood and tissue found under May's fingertips was consistent with Mack's DNA. The State charged Mack with the first-degree murder of May: with deliberation and premeditation and/or during the perpetration or attempted perpetration of a sexual assault. The State sought the death penalty, alleging two aggravating circumstances: Mack committed the murder while under sentence of imprisonment, and he committed the murder while committing or fleeing after committing a sexual assault.

Before trial, Mack personally informed the district court that he would "like to waive the jury trial and have a judge trial alone." The court continued the matter to allow Mack to discuss it with his counsel. Mack repeated his request at the subsequent hearing. When the court asked him if he understood what would happen if he were found guilty, Mack said he understood that "there would be another phase where a three-judge panel would decide, you just won't solely decide the sentencing phase of it." The court again continued the matter to allow Mack to look at the jury questionnaires before making his decision. At the next hearing, the court canvassed Mack and determined that he had reviewed the questionnaires and had considered and discussed the consequences of waiving a jury trial with his counsel. The court then granted Mack's request. Mack also signed a statement acknowledging that his attorneys had advised him

> on the potential benefits and detriments involved in waiving my right to have my case heard before a jury. *I understand that by choosing to have my trial heard by a judge, and if I am convicted of first-degree murder, my sentence will be decided by a three-judge panel.* I have discussed these matters with my counsel and I have decided to waive my right to a jury trial.[2]

At the guilt phase, the State basically presented the evidence of the crime summarized above. The only evidence presented by the defense was aimed at attacking the credibility of Floyd, who had

---

[2]Emphasis added.

discovered May's body. The district court found Mack guilty of first-degree murder under both theories advanced by the State. A three-judge panel was convened, and a penalty hearing was held.

The State relied on the guilt phase evidence to establish the sexual assault aggravator. For the other aggravator, it showed that Mack committed the instant murder while under sentence of imprisonment for a burglary conviction in California in June 1988. In addition, the State introduced evidence that Mack had numerous other convictions. These included battery causing substantial bodily harm in 1980, burglary and two counts of possession of stolen property in 1980, burglary and possession of stolen property in 1983, and conspiracy to commit larceny from the person in 1991. Most notably, the State showed that Mack was convicted of first-degree murder and sentenced to life in prison without possibility of parole for strangling a woman to death in 1994.[3] Evidence of Mack's prison disciplinary violations since his incarceration in 1994 was presented. Finally, a daughter and a son of May testified about the loss of their mother.

The defense presented several witnesses who expressed their belief that Mack's life was worth saving: Mack's uncle, two childhood friends, the mother of a childhood friend, and Mack's older brother. The brother also testified that their father had been violent to their mother. Mack's mother and sister and several friends of the family also submitted letters on his behalf. A correctional casework specialist from Ely State Prison testified that she did not consider Mack to be a violent inmate and that any disciplinary problems appeared related to changes in medication he was taking to maintain his mental stability. She found that Mack was helpful with other inmates, and she believed that his life was worth saving. Mack spoke in allocution. He offered condolences to May's family and apologized to his own family. He said that he could not find words to express his shame. Mack asked the panel for the opportunity to continue his rehabilitation in prison.

The panel found both aggravators beyond a reasonable doubt, and it found the following mitigating circumstances. Mack suffered from anxiety and psychotic disorders since his incarceration in 1994, though there was no evidence that he had a mental disorder at the time of the murder. Mack had demonstrated a satisfactory adjustment to a maximum security setting and had been cooperative with institutional personnel. He had also been cooperative with court personnel. He was able to provide assistance to other inmates for their adjustment and rehabilitation. Although there was no evidence of drug usage in committing the murder, Mack had abused controlled substances from high school at least up to 1990. He had demonstrated rehabilitation from such abuse during his incarceration. He had expressed regret that May was dead. He currently had

---

[3] *See infra* note 20.

a stable family, some of whom had limited contact with him. He witnessed some acts of male-on-female violence as a child, but there was no evidence he was subjected to violence himself. Though he made threatening remarks on at least one occasion, he had not committed any acts of violence during his incarceration.

The panel did not consider the under-sentence-of-imprisonment aggravator in the weighing process, concluding that it deserved little weight. But it found that all the mitigating circumstances did not outweigh the sexual assault aggravating circumstance alone. Accordingly, the panel imposed a sentence of death.

On June 24, 2002, after the penalty hearing was concluded, the United States Supreme Court issued an opinion in *Ring v. Arizona*,[4] holding that a capital sentencing scheme requiring a judge to determine aggravating circumstances violates the Sixth Amendment right to a jury trial. Mack filed a post-trial motion arguing that *Ring* required that he receive a new penalty hearing before a jury. The district court held a hearing on the motion and denied it.

## DISCUSSION

*The three-judge panel's determination of appellant's death sentence after he requested a bench trial did not violate his right to a jury trial*

Mack asserts that the death penalty imposed by the three-judge panel is unconstitutional and must be reversed and this matter must be remanded for a new penalty hearing before a jury. He relies on the holding in *Ring* that a capital sentencing scheme requiring a judge to determine aggravating circumstances violates the Sixth Amendment right to a jury trial. If apposite, *Ring* would apply here because this is a direct appeal and Mack's conviction is not yet final.[5] Applying *Ring* in *Johnson v. State,* this court held that a three-judge panel's finding of aggravating circumstances and imposition of death after the jury was unable to agree on a sentence violated the defendant's right to a jury trial.[6] However, *Ring* and *Johnson* concerned defendants who pleaded not guilty and initially had jury trials; the opinions did not address a defendant's waiver of the right to a jury trial.[7] In *Colwell v. State,* this court concluded that *Ring* did not apply where a defendant pleaded guilty and waived his right to a jury trial.[8]

---

[4]536 U.S. 584 (2002).

[5]*See Johnson v. State,* 118 Nev. 787, 802, 59 P.3d 450, 460 (2002).

[6]*Id.*

[7]*Id.* at 802 n.33, 59 P.3d at 460 n.33.

[8]118 Nev. 807, 822, 59 P.3d 463, 473 (2002), *cert. denied,* ____ U.S. ____, 124 S. Ct. 462 (2003).

Mack claims that he wanted a bench trial only in regard to the guilt phase of his trial, not the penalty phase. In *Colwell,* this court determined that the record belied Colwell's claim "that he only waived his right to have a jury determine his guilt, not his right to have a jury determine aggravating circumstances."[9] The record showed that "Colwell was aware that if he pleaded guilty a three-judge panel would determine his sentence. He did not object to this, nor did he try to limit or condition in any way his waiver of his right to a jury trial."[10] Similarly, the record here shows that Mack was aware that if his request for a bench trial was granted, a three-judge panel would determine his sentence. Like Colwell, he did not object to such a determination and did not try to limit or condition his waiver of his right to a jury trial.

Mack concedes that he did not request a jury determination of his sentence but argues that he had no choice but to accept determination of his sentence by the three-judge panel. Because the relevant statute, NRS 175.558,[11] does not provide the option of having a jury determine the sentence following a finding of guilt by the district court, Mack contends that he was unconstitutionally forced to forgo his right to a jury trial. As just noted, however, the record repels Mack's claim that he actually wanted a jury to decide his sentence. So does logic: he fails to explain why he did not want a jury to decide his guilt but did want a jury to decide his sentence. Further, Mack did have a choice—between an entire trial before a jury or one without a jury. He was informed that this was his choice, and no one forced him to waive his right to a jury trial. Offering a defendant the choice of having his entire trial before a jury or entirely without one does not appear to offend any of the reasoning in *Ring,* and the Supreme Court has stated elsewhere that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid."[12]

---

[9]*Id.* at 822, 59 P.3d at 474.

[10]*Id.*

[11]NRS 175.558 provides in relevant part:

> When any person is convicted of murder of the first degree upon . . . a trial without a jury, and the death penalty is sought, the supreme court shall appoint two district judges from judicial districts other than the district in which the plea is made, who shall with the district judge before whom the plea is made, or his successor in office, conduct the required penalty hearing to determine the presence of aggravating and mitigating circumstances, and give sentence accordingly.

[12]*Corbitt v. New Jersey,* 439 U.S. 212, 218 (1978) (rejecting a claim that offering a lower sentence in exchange for a guilty plea places an unconstitutional burden on the right to a jury trial and the right against compelled self-incrimination).

"[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."[13] A valid waiver of a fundamental constitutional right ordinarily requires "an intentional relinquishment or abandonment of a known right or privilege."[14] Here, Mack exercised his authority to make the decision to waive a jury. The record shows that he was well aware of his right to a jury trial, consulted with his attorneys about the decision, had ample time to consider the decision, and intentionally and voluntarily relinquished that right.

We conclude that Mack validly waived his right to have his sentence determined by a jury and that the three-judge panel's determination of his sentence was constitutional.

*The death sentence is not excessive in this case*

NRS 177.055(2) requires this court to review every death sentence and consider in addition to any issues raised on appeal:

> (b) Whether the evidence supports the finding of an aggravating circumstance or circumstances;
> (c) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and
> (d) Whether the sentence of death is excessive, considering both the crime and the defendant.

Mack does not raise any claims in regard to the first two issues. We conclude that the evidence supports the two aggravators found by the panel and that there is no indication that passion, prejudice, or any arbitrary factor influenced the imposition of the sentence.

Mack does contend that his death sentence is excessive. He cites *Haynes v. State,* where this court quoted the Supreme Court's observation " 'that under contemporary standards of decency death is viewed as an inappropriate punishment for a substantial portion of convicted first-degree murderers' " and concluded that death was not appropriate.[15] He also cites two other opinions by this court in which it determined that death sentences were inappropriate.[16] Mack points out that the panel gave weight to only one of

---

[13]*Jones v. Barnes,* 463 U.S. 745, 751 (1983).

[14]*Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

[15]103 Nev. 309, 319-20, 739 P.2d 497, 504 (1987) (quoting *Woodson v. North Carolina,* 428 U.S. 280, 296 (1976)).

[16]*Biondi v. State,* 101 Nev. 252, 699 P.2d 1062 (1985); *Chambers v. State,* 113 Nev. 974, 944 P.2d 805 (1997).

the two aggravators, found numerous mitigating circumstances, and yet found that those circumstances cumulatively did not outweigh the one aggravating circumstance relied on. He asserts that the weight of the mitigators together "simply overwhelmed the sole aggravator."

In analyzing excessiveness under NRS 177.055(2)(d), this court has defined the crucial question as: "are the crime and defendant before us on appeal of the class or kind that warrants the imposition of death?"[17] "This inquiry may involve a consideration of whether various objective factors, which we have previously considered relevant to whether the death penalty is excessive in other cases, are present and suggest the death sentence under consideration is excessive."[18] Mack fails to marshal the kind of objective factors which have persuaded this court that death sentences are excessive: in *Haynes,* a mentally disturbed defendant irrationally attacking a stranger and a single aggravating circumstance based on a fifteen-year-old armed robbery committed when the defendant was only eighteen; in *Biondi v. State,* a killing in an emotionally charged barroom confrontation and a single aggravating circumstance of a prior armed robbery; in *Chambers v. State,* an emotionally charged confrontation in which the defendant, who was drunk, was wounded and his professional tools were being ruined and a single aggravating factor based on eighteen-year-old robberies committed when the defendant himself was only eighteen.[19]

Here, by contrast, two aggravating circumstances exist, and Mack had an extensive, ongoing criminal history, including another strangulation murder of a female victim.[20] There is no evidence of an emotionally charged confrontation, nor is there evidence that Mack lacked rational capacity. The panel recognized a number of mitigating circumstances but did not find them particularly weighty. We consider that finding reasonable and conclude that the death sentence is not excessive under NRS 177.055(2)(d).

## CONCLUSION

We affirm the judgment of conviction and sentence of death.

---

[17]*Dennis v. State,* 116 Nev. 1075, 1085, 13 P.3d 434, 440 (2000).

[18]*Id.*

[19]*Id.* at 1085-86, 13 P.3d at 441.

[20]This 1994 murder conviction was grounds for a third aggravating circumstance under NRS 200.033(2). It is not clear why the State did not offer it as such.